BOBBY HUGH CRUMLEY, Plaintiff-Appellee,

*v.*

THE TRAVELERS INDEMNITY COMPANY,
Defendant-Appellant.

475 S.W.2d 654.

(*Nashville,* December Term, 1971.)

Opinion filed January 17, 1972.

WILSON N. WEST, H. STANLEY ALLEN, JR., Nashville, for plaintiff-appellee.

GLASGOW, ADAMS & TAYLOR, Nashville, for defendant-appellant.

Mr. Justice Humphreys, delivered the opinion of the Court.

This case is before the Court upon grant of the petition for writ of certiorari. The parties will be referred to by name: the petitioner, Bobby Hugh Crumley as Crumley, and the respondent, Travelers Indemnity Company, as Travelers or the Insurer.

Travelers issued to Crumley an automobile liability insurance policy containing "uninsured motorist" protection. The pertinent provisions of the policy are:

"The Travelers Indemnity Company—agrees—:

"COVERAGE C—PROTECTION AGAINST UNINSURED MOTORISTS (BODILY INJURY ONLY)

To pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile; provided . . .

*"Exclusions*

(b) This policy does not apply:

*under Coverage C,*

(q) to bodily injury to an insured, or care or loss of services recoverable by an insured, with respect to which *such insured,* his legal representative or any person entitled to payment under this coverage *shall,*

*without written consent of the company,* make any settlement with or *prosecute to judgment* any action against any person or organization who may be legally liable therefor;

## CONDITIONS

*If,* before the company makes payment of loss under Coverage C, *the insured* or his legal representative *shall institute any legal action* for bodily injury against any person or organization legally responsible for the use of an automobile involved in the accident, *a copy of the summons and complaint or other process served in connection with such legal action shall be forwarded immediately to the company by the insured* or his legal representative.

*Part 1—Coverages B and C—Part II No action shall lie against the company unless,* as a condition precedent thereto, there shall have been full compliance *with all the terms of this policy,* nor, under Part II, until thirty days after proof of loss is filed and the amount of loss is determined as provided in this policy.'' (Emphasis supplied.)

''b) for the purposes of this coverage, determination as to whether the insured or such representative is legally entitled to recover such damages and if so the amount thereof, shall be made by agreement between the insured or such representative and the company or, if they fail to agree, by arbitration.''

Crumley thereafter, on October 25, 1965, suffered property damage and personal injury in a collision with a car operated by an Arkansas resident. Crumley then filed for, and received from Travelers payments for property

damage and medical expenses under the "collision" and "medical payments" sections of the policy. Sometime prior to September 1, 1966 Crumley retained Wilson West, a lawyer with his office in Nashville, Tennessee, to seek damages for his personal injuries. West contacted Travelers' agent, also in Nashville, by telephone and asked for and received permission *under the policy* to start court proceedings to collect the personal injury claim against the out-of-state motorist. He also asked, if permission to sue were to be granted, if Travelers wanted him to prosecute their subrogation claim for property damage.

On September 1, 1966 Mr. West wrote the Travelers' agent as follows:

"I represent Bobby Hugh Crumley whose automobile was hit on October 25, 1965 at about 11" P.M. on Highway 70. He was insured by the Travelers Indemnity Company, and the policy carried, as I understand it, an uninsured motorist provision.

"As a result of my telephone conversation with you I am requesting all the information you can provide me concerning this accident and also as to any information which you might have on the defendant's name and whereabouts.

"We would like to obtain permission from the company under the policy to *start court proceedings* against the defendant. I understood in talking to you that your company was trying to collect the collision loss and had located the defendant in Arkansas. If we bring our suit, please advise whether or not you want your collision loss included in the suit which we intend to bring if permitted to do so by your company.

"Time is rather short in this matter, and your prompt attention to this will be sincerely appreciated. Yours very truly." (Emphasis supplied.)

On September 9, 1966, the agent replied:

"This is to acknowledge receipt of your letter dated September 1, 1966 which was written *in regard to our telephone conversation* on that date.

"We would like very much to have you represent *the Travelers Insurance Company in a recovery attempt for the $540.00 collision payment* under this insured's policy and this will be done on a continued (sic) fee basis.

"Also in regard to your request concerning the owner of the other vehicle involved we are showing this owner to be as follows: Elmer E. Kuske, Route 2, Box 406, Little Rock, Arkansas.

"Immediately following receipt of this letter, you should have sufficient information concerning the details of this accident to help you in your recovery attempt. If I may be of any further help, please feel free to call upon me at your convenience." (Emphasis added.)

On October 12, 1966, West filed suit in the Circuit Court of Wilson County, asking $50,000.00 damages. Process was served upon the Secretary of State. Travelers was not notified of the filing, and was not given copies of the process.

On April 6, 1968 a declaration was filed, no copy being sent to Travelers.

On April 5, West wrote to Travelers' agent:

"The case of *Crumley v. Kuske et al* is set for trial Monday, April 22, at 9:00 A.M. in Lebanon, Tennessee. The letter which I received from you on September 9, 1966 indicated Elmer F. Kuske to be the owner. There seems to be some question as to whether Kuske or DeBosier was the owner. I have sued both of them but will need to non-suit at the time of the trial as to one of them since I understand that DeBosier was the registered owner and Kuske had purchased the truck a few days prior to the accident. One of your adjusters evidently checked this matter out in Arkansas and verified the ownership. Please advise me immediately concerning this matter."

The above was the first communication with Travelers since the letter of September 1, 1966. But, even though the agent was in Nashville, and could have reached West by phone to talk about the case, he made no effort to do so.

Upon hearing of the cause on April 22, 1966, a jury was waived and the deposition of Crumley's physician, which had been taken ex parte and without notice to Travelers, was presented, together with Crumley's testimony. A default judgment was entered nunc pro tunc for the trial date, against the defendants for $5,000.00 personal injuries and $796.80 for property damage.

On June 19, 1968 West wrote Travelers' agent:

"I took judgment against Elmer F. Kuske and Robert Daughenbaugh in the amount of $5,000 for personal injuries and $796.80 property damage in Lebanon, Tennessee. I have run an execution in Wilson County

which was returned with no property to be found in the county belonging to the defendants. It was necessary that I non-suit as to T. C. DeBosier since your information was that he did not own the truck at the time of the accident. We need the help of your Little Rock office in attempting to find and running execution against Kuske and Daughenbaugh.

"The policy of Mr. Bobby Hugh Crumley of course provides under Part I for protection against uninsured motorists, and I have been unable to find that the defendants were insured. I am by this letter making demand upon your company for the $5,000 under said policy.

"Please contact concerning this matter at your earliest convenience."

Afterwards Travelers and Crumley were unable to settle, Travelers eventually denying its liability on the basis of Crumley's noncompliance with policy conditions. Crumley then filed the action in the instant case against Travelers to recover on the policy. Upon hearing, Mr. West presented the testimony (together with exhibits) of himself, an associate and Mr. Crumley as to the matters set out above, and a certified copy of an "Order of Suspension" of the Arkansas State Revenue Department revoking the licenses, license plates and registration of the Arkansas defendants for failure to maintain proof of financial responsibility as required by Arkansas statutes.

Travelers presented the testimony of its agent, who admitted that the testimony of Mr. West was correct, and further that because of the delay between his communication with Mr. West in 1966 and that in 1968 he

had "closed the file" and sent it to Travelers' home office. He stated that upon receiving West's letter notifying him of the trial date he sent for the file, which did not reach him for two weeks, or one week after the trial date.

From all the above, the trial court found for the plaintiff, Crumley, giving judgment for the $5,000 against Travelers, and, in addition, 25 per cent of that amount as a penalty for bad faith causing the plaintiff additional expenses, as provided by T.C.A. sec. 56-1105.

Travelers appealed, and the Court of Appeals, Todd, Justice, reversed, holding that Crumley had failed to perform conditions precedent to the policy, that these conditions were not waived, and that consequently Crumley could not recover.

Thereupon Crumley petitioned this Court for the writ of certiorari.

■ It may be conceded, for the purposes of this opinion, that the policy requirements pertaining to written permission to proceed to judgment and of providing a copy of the summons and complaint were not strictly complied with. Nonetheless, we are of the opinion that the record in this case shows conduct on the part of the insurance company so clearly inconsistent with an intention to insist upon a strict compliance with those provisions of the policy as to constitute an implied waiver. *Sexton v. Hartford Fire Ins. Co.,* 7 Tenn.App. 273 (1928); *Hale v. State Farm Mutual Automobile Ins. Co.,* 225 Tenn. 620, 474 S.W.2d 905.

In *Hale v. State Farm,* supra, policy provisions similar to those here were considered by this Court. In that case the complete inaction of the uninsured motorist

carrier, after it was notified of the pendency of suit against the uninsured motorist, was held to constitute a waiver of policy provisions requiring that the insuror be furnished a copy of the declaration and that written consent of the insuror for the suit to be obtained. Here, the insuror's conduct does much beyond mere inaction. Indeed, it is difficult to imagine conduct more inconsistent with an intention to hold the insured to strict compliance with the "notice" and "permission to sue" provisions of the policy than that of the insuror in this case.

■ After being advised, by telephone and in writing, that Mr. Crumley's suit for personal injuries was about to be brought, and after being requested to give "permission . . . under the policy to start court proceedings," Travelers not only cooperated fully with Mr. West in garnering information about the out-of-state defendants, but employed him to prosecute its own subrogation claim, necessarily in conjunction with Mr. Crumley's action.[1]

It may be, as insisted by Travelers, that Mr. West should not have let so long a time go by without advising it of the status of the action against the Arkansas defendants. At the same time, having been notified of the suit, and having employed West to represent it, and having its own responsibility under the policy, Travelers was more at fault than West. The record is clear that Travelers was notified a week prior to the trial date and failed

---

[1] There can be no doubt, from an examination of the correspondence alone, that Travelers knew its subrogation claim was to be prosecuted as a part of Mr. Crumley's action. Indeed, Travelers could hardly have been unaware that its subrogation right would otherwise be lost, since the cause of action against the Arkansas defendants could not be split into separate suits for personal injury and property damages. *Globe & Rutgers Fire Ins. Co. v. Cleveland*, 162 Tenn. 83, 34 S.W.2d 1059 (1931); *National Cordova Corporation v. City of Memphis*, 214 Tenn. 371, 380 S.W.2d 793 (1964).

to take any action whatsoever. Travelers certainly had sufficient time at least to contact Mr. West, and to take further action based on information received from him. And it cannot be excused because its file was not in Nashville. It was aware of the existing potential liability under the policy because it had been notified of the suit. And for it to close the file with the case in this condition amounts to neglect, and neglect cannot excuse.

We have carefully read the opinions in the cases from other jurisdictions to which we have been cited, and which our own research has disclosed, and find none in which the facts are sufficiently similar to aid us in our decision of this case. Suffice it to say that in this particular case, we find that the record shows conduct of the insurance company clearly constituting an implied waiver of the ''notice'' and ''permission to sue'' policy provisions. *Hale v. State Farm Mutual Insurance Co.,* supra; *Sexton v. Hartford Fire Ins. Co.,* supra.

■ Since Travelers waived the policy provisions on which it relies, (which would necessarily include the policy provision with respect to arbitration, which Travelers would have to call into operation prior to waiving its rights under the policy with respect to the suit), it necessarily follows that the trial of the personal injury damage suit proceeded with Travelers implied consent. So, Travelers is bound by the outcome thereof. This is especially true in the absence of any indication in the case sub judice that the judgment awarded by the Circuit Court in the damage suit was not fully sustained by the proof. The present case was tried on Travelers plea of nil debit. Travelers made no effort to plead or prove that Crumley's original judgment was not warranted by the extent of his injuries. Or, that anything had

been done with respect thereto which was fraudulent or illegal.

█ We are of opinion the trial judge entered the proper judgment in this case, except with respect to the twenty-five per cent statutory penalty awarded because, although the case does smack of neglect on Travelers' part, in failing to give its insured the attention he was entitled to under his policy, we do not think its conduct therein arises quite to the level of bad faith. After all, it is necessary to draw the inferences from the facts which we have drawn before the implication of waiver can be adjudged to exist. And we doubt if Travelers can be charged with bad faith in not drawing these inferences.

The judgment of the Court of Appeals is set aside and the judgment of the trial court is affirmed, except with respect to the allowance of the statutory penalty of twenty-five per cent.

DYER, CHIEF JUSTICE, CRESON and McCANLESS, JUS-TICES, and JENKINS, SPECIAL JUSTICE, concur.