COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-07-293-CV

 

 

NORTHWEST CONSTRUCTION                                              APPELLANT

COMPANY,
INC.

 

                                                   V.

 

THE OAK PARTNERS, L.P.,                                                    APPELLEES

MORGAN DEVELOPMENT

AND SUPPLY, INC.,

METROPLEX MASONRY, INC.,

ARI-TEX, INC., MAX PLUMBING

CONTRACTORS, INC.,

S & S TILE, LTD., AND

KENT-ANDERSON CONCRETE, L.P.

D/B/A ANDERSON CONCRETE

CONSTRUCTION

 

                                              ------------

 

              FROM
THE 355TH DISTRICT COURT OF HOOD COUNTY

 

                                              ------------

 

AND

 








                                        NO.
2-07-328-CV

 

 

IN RE NORTHWEST                                                                 RELATOR

CONSTRUCTION
COMPANY, INC.

 

 

                                              ------------

 

                                    ORIGINAL
PROCEEDING

 

                                              ------------

 

                                             OPINION

 

                                              ------------








This consolidated mandamus
proceeding and interlocutory appeal arise from the trial court=s order denying relator and appellant Northwest Construction Company,
Inc.=s motion to compel arbitration in the underlying suit involving
construction of an assisted living center in Granbury, Texas.  In both the appeal and mandamus proceeding,
Northwest raises the following four issues: 
(1) whether there is a valid arbitration clause binding the parties that
encompasses the dispute; (2) whether the trial court had jurisdiction to
determine if Northwest waived its right to arbitrate the dispute; (3) whether
the trial court erred by ruling that Northwest waived its right to arbitrate by
substantially invoking the judicial process to the detriment of the other
parties; and (4) whether appellees have waived their right to rely on mediation
as a condition precedent to the enforceability of the arbitration clause.  We affirm the trial court=s order in part and reverse it in part.  We also dismiss Northwest=s petition for writ of mandamus.

Background Facts

On April 27, 2004, Northwest
entered into a construction contract with The Oak Partners, L.P., an appellee
and real party in interest, to design and construct an assisted living facility
in Granbury, Texas.  The contract
referenced the facility to be constructed as Amore particularly described in the design development plans and
specifications and design criteria identified in Exhibit B@ attached to the contract. 
Exhibit B, in turn, provided that the project specifications were the AProject Manual for The Courtyards at Lake Granbury, Granbury, Texas,
prepared by GSR Andrade Architects dated April 16, 2004.@  The April 16, 2004 Project
Manual included a provision incorporating into it A[t]he >General
Conditions of the Contract for Construction=, AIA Document A201, Fourteenth Edition, 1997, Articles 1 through 14
inclusive.@  A new Project Manual dated May 28, 2004
contained the same language. 

AIA Document A201-1997 contains
an arbitration clause, which reads as follows, in pertinent part:








Claims
not resolved by mediation shall be decided by arbitration which, unless the
parties mutually agree otherwise, shall be in accordance with the Construction
Industry Arbitration Rules of the American Arbitration Association currently in
effect.  The demand for arbitration shall
be filed in writing with the other party to the Contract and with the American
Arbitration Association, and a copy shall be filed with the Architect.  

 

The term AClaim@ is defined
as

a
demand or assertion by one of the parties seeking, as a matter of right,
adjustment or interpretation of Contract terms, payment of money, extension of
time or other relief with respect to the terms of the Contract.  The term AClaim@ also
includes other disputes and matters in question between the Owner and Contractor
arising out of or relating to the Contract. 


 

After entering into the
contract with Oak Partners, Northwest entered into subcontractor agreements
with S & S Tile, Ltd., Morgan Development and Supply, Inc., Metroplex
Masonry, Inc., Ari-Tex, Inc., Kent-Anderson Concrete L.P. d/b/a Anderson
Concrete Construction, and Max Plumbing Contractors, Inc.  Each of the subcontract agreements contained
the following provisions:

The
terms of the dispute resolution and claims procedure contained in the General
Contract shall be binding upon Subcontractor, whether or not Subcontractor
records or files a mechanic=s lien, stop notice or
prosecutes suit thereon or against any bond posted by Contractor; and
Subcontractor hereby acknowledges that this Subcontract waives, affects, and
impairs rights it would otherwise have in connection with such liens, stop
notices and suits on said bonds.

 

. . .
.

 








Any disputes or controversies
not resolved or settled by the parties under the previous provisions shall be
submitted to binding arbitration in accordance with the Construction Industry
Rules of the American Arbitration Association and any judgment upon the award
by the arbitrators may be entered by any court having jurisdiction.  The venue for any hearing under this
arbitration provision shall be in Dallas County, Texas.  

After Northwest constructed
the facility, Oak Partners sued Northwest on August 30, 2005, in the 355th
District Court of Hood County, alleging that Northwest had breached the
contract; Oak Partners claimed that the facility had failed to pass inspections
by the Texas Department of Aging and Disability Services because certain parts
of the design and construction were not in accordance with the Department=s applicable rules and regulations. 
Northwest filed its original answer in the suit on December 12,
2005.  

S & S Tile and Max
Plumbing sued Oak Partners and Northwest in separate suits in the 355th
District Court, claiming they were owed money on the project.  On January 11, 2006, Northwest filed a motion
to consolidate the Max Plumbing and Oak Partners cases.  The trial court granted the motion the next
day and consolidated the cases.  On
January 19, 2006, Northwest filed a motion to consolidate the S & S Tile
case with the two consolidated cases. 
Before the trial court ruled on the motion to consolidate, S & S
Tile filed a motion for summary judgment. 
While that motion was pending, the trial court granted Northwest=s motion to consolidate the S & S Tile case with the other two
cases on February 2, 2006.  








Northwest filed a
counterclaim against Oak Partners on February 3, 2006, alleging that Oak
Partners breached the contract by failing to pay for change orders, causing
delays, and refusing to release retainage. 
Northwest also brought causes of action for quantum meruit, promissory
estoppel, and foreclosure of statutory and constitutional liens; a Prompt
Payment Act claim; and a claim for attorneys= fees.  

Northwest and Oak Partners
filed responses to S & S Tile=s motion for summary judgment on March 10, 2006.  The motion was set for a hearing on March 17,
2006, but S & S Tile and Northwest entered into a rule 11 agreement to
remove the motion from the court=s docket.[1]  The motion was never reset.

On February 17, 2006,
Kent-Anderson filed a separate suit against Northwest and Oak Partners, which
the trial court consolidated with the other three cases upon Northwest=s motion.  Oak Partners then
filed a first amended petition adding GSR as an additional defendant and
alleging causes of action for breach of contract and negligence.  After the addition of GSR as a defendant,
subcontractors Morgan Development and Supply, Inc., Metroplex Masonry, Inc.,
and Ari-Tex, Inc. intervened in the suit.








Northwest filed a motion for
partial summary judgment on May 2, 2007. 
In it, Northwest sought a ruling that Oak Partners could not recover
damages arising from design flaws or errors or omissions in the project
design.  Northwest asserted the
affirmative defenses of estoppel, contractual bar, violation of the express
negligence rule, and waiver.  Oak
Partners filed a response on May 30, 2007. 
GSR also filed a response and an affidavit in opposition to the motion. 

On June 25, 2007, Northwest
filed a First Amended Original Counterclaim and Original Cross-Claim,
re-alleging its claims against Oak Partners, adding declaratory and unjust
enrichment claims, and alleging cross-claims against GSR and the
subcontractors.  On July 9, 2007,
Northwest filed a AMotion to
Compel Arbitration@ and a AMotion for Leave to Designate Responsible Third Parties,@ which it expressly made contingent upon the trial court=s denial of its motion to compel arbitration. 








The trial court denied
Northwest=s motion to
compel arbitration on the ground that Northwest had waived its right to
arbitration by substantially invoking the judicial process to the detriment of
all of the opposing parties in the case.[2]   Before this court, Oak Partners is the only
party opposing Northwest=s request
for arbitration.  Accordingly, we will
review whether the trial court properly denied Northwest=s motion to compel arbitration.

This Court=s Jurisdiction








To determine whether we have
jurisdiction over the interlocutory appeal in addition to the mandamus
petition, we must decide whether the trial court denied Northwest=s motion to compel pursuant to the Federal Arbitration Act (FAA), the
Texas General Arbitration Act (TGAA), or both. 
See 9 U.S.C.A. '' 1‑16 (West 1999 & Supp. 2007); Tex. Civ. Prac. & Rem. Code Ann. '' 171.001‑.098 (Vernon 2005); In re Citigroup Global Mkts.,
Inc., 202 S.W.3d 477, 480 (Tex. App.CDallas 2006, orig. proceeding). 
In Texas, a trial court=s denial of arbitration under the FAA may be challenged only by
mandamus and not by interlocutory appeal. 
In re D. Wilson Constr. Co., 196 S.W.3d 774, 779 (Tex. 2006)
(orig. proceeding); Jack B. Anglin Co. v. Tipps, 842 S.W.2d 266, 272 (Tex.
1992) (orig. proceeding).  But a party
may seek to enforce an arbitration agreement under both the FAA and TGAA if,
like the agreement here, it does not say whether the FAA or TGAA applies.  D. Wilson Constr. Co., 196 S.W.3d at
778‑79.  Texas appellate courts
have jurisdiction over interlocutory appeals from the denial of arbitration
under the TGAA only or under both the FAA and TGAA.  Tex.
Civ. Prac. & Rem. Code Ann. ' 171.098(a)(1); D. Wilson Constr. Co., 196 S.W.3d at 778‑79.

Here, the agreement upon
which Northwest relies does not purport to be governed by either the FAA or the
TGAA.  In its motion to compel, Northwest
sought arbitration under both the FAA and TGAA. 
Oak Partners contends in its response to the petition for writ of
mandamus that Northwest did not bring forward any evidence of interstate
commerce showing that the agreement is enforceable under the FAA; thus,
according to Oak Partners, enforceability of the agreement is governed by the TGAA
only. 

The trial court=s order denying arbitration does not specify whether the denial was
under the FAA or TGAA.  Northwest filed
both a petition for writ of mandamus and an interlocutory appeal in this court,
contending that the agreement is enforceable under the TGAA as well as the
FAA.  Accordingly, we have jurisdiction
over both the appeal and the mandamus unless the FAA pre‑empts the TGAA
in this instance.  See id. at 779‑80.








To determine whether an
agreement that does not purport to be under either the FAA or TGAA is governed
only by the FAA (i.e., whether the FAA pre‑empts the TGAA), thus
precluding an appellate court=s jurisdiction over an interlocutory appeal, we must determine whether
(1) the agreement is in writing, (2) it involves interstate commerce, (3) it
can withstand scrutiny under traditional contract defenses, and (4) state law
affects the enforceability of the agreement. 
9 U.S.C.A. ' 2; D.
Wilson Constr. Co., 196 S.W.3d at 780; In re Nexion Health at Humble,
Inc., 173 S.W.3d 67, 69 (Tex. 2005) (orig. proceeding).  For the FAA to pre-empt the TGAA, state law
must refuse to enforce an arbitration agreement that the FAA would enforce,
either because (1) the TGAA has expressly exempted the agreement from coverage,
or (2) the TGAA has imposed an enforceability requirement not found in the
FAA.  D. Wilson Constr. Co., 196
S.W.3d at 780.   In other words, the FAA
pre‑empts only contrary state law, not consonant state law.  Id. at 779.








We conclude that the FAA does
not pre-empt the TGAA here.  Northwest
has not directed us to, nor have we found, any evidence of interstate commerce
in the record.  Likewise, Northwest did
not direct the trial court to any such evidence.  Because this suit involves a construction
project, it is possible that materials may have come from out of state, but
Northwest has not directed us to anything in the record to support that
conclusion, nor have we found any evidence in the record that would support
such a conclusion.  See, e.g.,
In re Nasr, 50 S.W.3d 23, 25-26 (Tex. App.CBeaumont 2001, orig. proceeding) (holding that construction contract
involved interstate commerce because list of subcontractors in record included
Wal-Mart).  We hold that Northwest has
failed to prove that the arbitration agreement involves interstate commerce;
thus, the FAA does not pre-empt the TGAA in this instance, and we have
jurisdiction over Northwest=s interlocutory appeal.  For the
same reason, we do not have jurisdiction to grant relief on Northwest=s petition for writ of mandamus. 
See In re D. Wilson Constr. Co., 196 S.W.3d at 779.  Because we have jurisdiction over the
interlocutory appeal only, we will address Northwest=s issues within the context of that proceeding.

Existence of Valid Arbitration
Agreement

In its first issue, Northwest
contends that it proved the existence of a valid arbitration agreement and that
all of the claims asserted against it in the underlying suit are within the
scope of that agreement.  Oak Partners
responds that Northwest failed to prove that all claims were within the scope
of a valid arbitration agreement because

Northwest
. . . did not present any evidence at the hearing on its Motion to Compel.  The only documents presented were unsworn and
unauthenticated exhibits to its Motion to Compel, and even those exhibits do
not contain enough information to make an informed decision regarding whether
the documents refer to each other or are all a part of the construction
contract at issue in this case. 

 








In Jack B. Anglin Co. v.
Tipps, the Texas Supreme Court held that Athe trial court may summarily decide whether to compel arbitration on
the basis of affidavits, pleadings, discovery, and stipulations@; the trial court is not required to conduct an evidentiary hearing
unless the Amaterial
facts necessary to determine the issue@ are controverted.  842 S.W.2d
266, 269 (Tex. 1992).  Northwest attached
the contract, and the pertinent documents that were incorporated into it by
reference, to its motion to compel.  The
trial court clearly reviewed these documents at the hearing on the motion to
compel.[3]  See Tex.
R. Evid. 201; Barnard v. Barnard, 133 S.W.3d 782, 786 (Tex. App.CFort Worth 2004, pet. denied) (A[T]he trial court may take judicial notice of its file at any stage of
proceedings and is presumed to have done so with or without a request from a
party.@).  At the conclusion of the
hearing, the trial court concluded, AWell, of course, it appears that there=s an arbitration provision here in this contract.  The issue would certainly seem to be whether
or not there has been a waiver.@  








We conclude that the trial
court properly determined, based on the procedure promulgated in Tipps,
that a valid arbitration existed and that the claims in the underlying suit
were included within the scope of that agreement.[4]  We sustain Northwest=s first issue; however, we must address its remaining issues relating
to whether the trial court properly determined that it waived its right to
arbitrate.

Subject Matter Jurisdiction
of Trial Court

Northwest argues in its
second issue that the trial court did not have subject matter jurisdiction to
decide whether it waived its right to arbitration because, once a trial court
decides that a dispute is subject to arbitration, the arbitrator must determine
any defenses to arbitration raised by an opposing party, including waiver.













In support of its contention,
Northwest relies on Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79,
123 S. Ct. 588 (2002).  In that case, the
United States Supreme Court held that A>procedural= questions
which grow out of the dispute and bear on its final disposition= are presumptively not for the judge, but for an arbitrator, to
decide. . . .  So, too,
the presumption is that the arbitrator should decide >allegation[s] of waiver, delay, or a like defense to arbitrability.=@  Id. at 84, 123 S. Ct.
at 592 (citations omitted).  The issue in
Howsam was not whether the trial court had subject matter
jurisdiction to determine such procedural questions; rather, it was whether
the presumption in favor of arbitration should be employed when determining
which Aforum-based decisionmaker@Can arbitrator or trial court judgeCis the more appropriate choice Ato decide forum-specific procedural gateway matters.@  Id. at 84-86, 123 S.
Ct. at 592-93.  In Howsam, the
petitioner had instituted an arbitration proceeding under the National
Association of Securities Dealers (NASD) rules, and the respondent filed suit
in federal court asking for a declaration that the arbitration could not
proceed because NASD=s rules
prohibited arbitrations after Asix (6) years ha[d] elapsed from the occurrence or event giving rise
to the . . . dispute.@  Id. at 81-82, 123 S.
Ct. at 590-91.  In determining that the
arbitrator was the more appropriate Aforum-based decisionmaker@ to decide whether the NASD rule operated to bar arbitration of the
dispute, the Supreme Court noted that ANASD arbitrators, comparatively more expert about the meaning of their
own rule, [would be] better able to interpret and to apply it.@  Id. at 85, 123 S. Ct.
at 593.  The Court also relied on its
prior decision in Moses H. Cone Memorial Hospital v. Mercury Construction,
in which it stated that

[t]he Arbitration Act
establishes that, as a matter of federal law, any doubts concerning the scope
of arbitrable issues should be resolved in favor of arbitration, whether
the problem at hand is the construction of the contract language itself or an
allegation of waiver, delay, or a like defense to arbitrability.

460 U.S. 1, 24-25, 103 S. Ct. 927, 941 (1983)
(emphasis added); see also In re Serv. Corp. Int=l, 85 S.W.3d 171, 173 (Tex. 2002) (quoting
above passage from Moses, yet going on to address merits of trial court=s decision on waiver).








After carefully considering
the Court=s precise
language and holding in Howsam, and the Moses H. Cone case which
it cites, we conclude that the issue here is not one of subject matter
jurisdiction; rather, it is whether the presumption in favor of
arbitrability should apply to the determination of which Aforum-based decisionmaker@[5] is better suited to decide the procedural questions, such as Awaiver, delay or a like defense to arbitrability.@[6]  Because the issue is not one
of subject matter jurisdiction, Northwest was required to raise it in the trial
court; it did not.  See Tex. R. App. P. 33.1(a); Mack
Trucks, Inc. v. Tamez, 206 S.W.3d 572, 577 (Tex. 2006).  In fact, at the hearing on the motion to
compel, Northwest told the trial court that it would have to decide the issue,
arguing that

the
court must consider three questions; was there an agreement or set of
agreements to arbitrate, whether the dispute . . . is
subject to those agreements to arbitrate? 
If you answer . . . those first two questions, >Yes,= then
you must abate the action and must order the case to arbitration, unless Oak
Partners or one of the other parties is able to prove waiver.@  [Emphasis added.]  

 

Northwest and Oak Partners both devoted the
majority of their arguments at the motion to compel hearing to whether
Northwest had substantially invoked the judicial process to Oak Partners= detriment.  Accordingly, we
conclude and hold that Northwest failed to preserve its complaint that the
arbitrator, rather than the trial court, should have determined whether it
waived its right to arbitrate by substantially invoking the judicial process to
its opponents=
detriment.  We overrule Northwest=s second issue.








Whether Northwest Waived its Right to Arbitrate
by Substantially Invoking the Judicial Process to Oak Partners=
Detriment

 

Northwest contends in its third issue that the trial court incorrectly
concluded that Northwest had waived its right to arbitrate any part of the
dispute by substantially invoking the judicial process to its opponents= detriment.








Because
public policy favors arbitration, there is a strong presumption against finding
that a party has waived its right to arbitration; the burden to prove waiver is
thus a heavy one.  In re Bank One, N.A.,
216 S.W.3d 825, 827 (Tex. 2007); In re Bruce Terminix Co., 988 S.W.2d
702, 704‑05 (Tex. 1998); Jones v. Citibank (South Dakota), N.A.,
235 S.W.3d 333, 340 (Tex. App.CFort Worth 2007, no pet.).  Any
doubts regarding waiver are resolved in favor of arbitration.  Bruce Terminix Co., 988 S.W.2d at 705;
Jones, 235 S.W.3d at 340; Southwind Group, Inc. v. Landwehr,
188 S.W.3d 730, 735 (Tex. App.CEastland 2006, orig. proceeding). 
Waiver may be express or implied, but it must be intentional.  EZ Pawn Corp. v. Mancias, 934
S.W.2d 87, 89 (Tex. 1996); Jones, 235 S.W.3d at 340; Southwind Group,
Inc., 188 S.W.3d at 735.  Whether
waiver occurs depends on the individual facts and circumstances of each
case.  Jones, 235 S.W.3d at 340; Southwind
Group, Inc., 188 S.W.3d at 735; Williams Indus., Inc. v. Earth Dev. Sys.
Corp., 110 S.W.3d 131, 135 (Tex. App.CHouston [1st Dist.] 2003, no pet.).

A party does not waive
arbitration merely by delay; instead, the party urging waiver must establish
that any delay resulted in prejudice.  In
re Vesta Ins. Group, Inc., 192 S.W.3d 759, 763 (Tex. 2006); Prudential
Secs. Inc. v. Marshall, 909 S.W.2d 896, 898-99 (Tex. 1995) (orig.
proceeding); Jones, 235 S.W.3d at 340. 
Therefore, the test for determining waiver is two‑pronged:  (1) did the party seeking arbitration
substantially invoke the judicial process, and (2) did the opposing party prove
that it suffered prejudice as a result.  Jones,
235 S.W.3d at 340.

Substantial Invocation of Judicial
Process








Merely taking part in
litigation does not constitute substantial invocation of the judicial
process.  See In re Vesta Ins. Group,
192 S.W.3d at 763; Bruce Terminix Co., 988 S.W.2d at 704; Jones,
235 S.W.3d at 340.  To substantially
invoke the judicial process, a party must make a specific and deliberate act
after suit is filed that is inconsistent with its right to arbitrate, such as
engaging in extensive discovery or requesting a jury.  Nationwide of Bryan, Inc. v. Dyer, 969
S.W.2d 518, 522 (Tex. App.CAustin 1998, no pet.). 
Substantially invoking the judicial process may occur when the party
seeking arbitration actively has tried, but failed, to achieve a satisfactory
result in litigation before turning to arbitration.  Jones, 235 S.W.3d at 340; Southwind
Group, Inc., 188 S.W.3d at 736; Williams Indus., Inc., 110 S.W.3d at
135.  Examples include moving for summary
judgment or seeking a final resolution of the dispute.  Williams Indus., Inc., 110 S.W.3d at
135.  Another factor to consider is how
much activity has taken place in the suit. 
Vireo, P.L.L.C. v. Cates, 953 S.W.2d 489, 497 (Tex. App.CAustin 1997, pet. denied). 
Actions constituting waiver may include the movant=s engaging in some combination of the following:  filing an answer, setting up a counterclaim,
pursuing discovery, and moving for a continuance prior to moving for a stay
pending arbitration.  Cent. Nat=l Ins. Co. of Omaha v. Lerner, 856 S.W.2d
492, 494 (Tex. App.CHouston [1st
Dist.] 1993, orig. proceeding); see also In re Vesta Ins. Group, 192
S.W.3d at 764 (holding, in FAA-controlled case, AWe agree that allowing a party to conduct full discovery, file motions
going to the merits, and seek arbitration only on the eve of trial defeats the
FAA=s goal of resolving disputes without the delay and expense of litigation.@).[7]








The evidence here shows that
during the approximately nineteen months from the time it filed its answer in
the suit to the time it filed its motion to compel arbitration, Northwest
served four sets of interrogatories, and one set each of requests for production
and requests for admissions, to Oak Partners; served one set each of
interrogatories, requests for disclosure, and requests for production on the
subcontractors; filed four subpeonas for production of documents from third
parties; filed a counterclaim and amended counterclaim against Oak Partners;
filed cross-claims against the subcontractors; filed a motion for partial
summary judgment seeking to preclude Oak Partners from seeking any damages
related to design defects in the facility; agreed to extensions of the expert
designation deadlines; and agreed to at least one extension of the trial
setting.  Northwest points out that it
never received a ruling on its partial motion for summary judgment and that the
motion did not request a final ruling on all of Oak Partners= claims; it also characterizes its discovery as Aminimal.@








Northwest focuses on its
various activities in the suit in isolation; however, when viewed together, all
of Northwest=s actions in
the suit indicate an intention to avail itself of the judicial process.  Northwest admitted at the hearing on the
motion to compel that it sought discovery to aid in mediation and that the
failure of mediation was the impetus for its motion to compel arbitration.  In other words, it appears that Northwest was
prepared to avail itself of the judicial process so long as it was able to
achieve the results it desired.  When
Northwest finally filed its motion to compel in July 2007, trial was set for
September 24, 2007.  We conclude and hold
that Northwest=s activity
in the suit constituted substantial invocation of the judicial process.  See In re Vesta Ins. Group, 192 S.W.3d
at 764; Lerner, 856 S.W.2d at 495; see also Price v. Drexel Burnham
Lambert, Inc., 791 F.2d 1156, 1159, 1162 (5th Cir. 1986).

Prejudice to Opposing Parties

Northwest claims that even if
it substantially invoked the judicial process, Oak Partners and the other
parties to the suit, i.e., the subcontractors, failed to show prejudice as a
result; thus, the trial court erred by finding that Northwest had waived its
right to arbitrate the dispute. 
According to Northwest, the discovery it sought and obtained in the suit
is also discoverable in arbitration under the Construction Industry Arbitration
Rules of the American Arbitration Association, and Oak Partners cannot show
that its attorneys= fees would
not have been available to it in arbitration. 
Further, Northwest contends that even if Oak Partners is able to show
prejudice, the subcontractors did not bring forward any evidence of prejudice;
thus, the trial court erred in determining that Northwest waived arbitration as
to all of the parties in the suit.








The prejudice on which courts
focus includes such things as (1) the movant=s access to information that is not discoverable in arbitration and
(2) the opponent=s incurring
costs and fees due to the movant=s actions or delay.  Williams
Indus., Inc., 110 S.W.3d at 135. 
Although delay alone does not necessarily show prejudice, it is a
material factor to consider.  Sedillo
v. Campbell, 5 S.W.3d 824, 828 (Tex. App.CHouston [14th Dist.] 1999, no pet.). 
Showing prejudice is generally an evidentiary burden.  Williams Indus., Inc., 110 S.W.3d at
135.

Northwest contends that all
of the discovery it propounded would be available to it in an arbitration
proceeding under the AAA=s
construction-related arbitration rules, which the parties agreed to employ in
the event of arbitration.  Those rules
provide that A[a]t the
request of any party or at the discretion of the arbitrator, consistent with
the expedited nature of arbitration, the arbitrator may direct (i) the
production of documents and other information, and (ii) the identification of
any witnesses to be called.@  They also compel the parties
to Aexchange copies of all exhibits they intend to submit at the
[arbitration] hearing@ at least
five business days prior to the hearing. 
The rules further provide that A[t]here shall be no other discovery, except as indicated herein or as
ordered by the arbitrator in extraordinary cases when the demands of justice
require it.@ 













Oak Partners correctly points
out that the applicable arbitration rules do not provide for requests for
admissions or for interrogatories, which constituted the bulk of the discovery
Northwest sought from Oak Partners.[8]  Oak Partners incurred legal fees for counsel
and local counsel to review and respond to this discovery.[9]  At the hearing on Northwest=s motion to compel, Oak Partners offered as evidence an affidavit from
its counsel averring that Northwest had served on Oak Partners four sets of
interrogatories and one set each of a request for admissions, request for
disclosure, and request for production. 
Oak Partner=s counsel
also averred that AOak Partners
has answered, responded, and/or objected to all of this discovery sent by
Northwest.@[10]  

Oak Partners also introduced
evidence that it incurred attorney=s fees and expenses in responding to Northwest=s motion for partial summary judgment. 
Northwest did not cancel the partial summary judgment trial date until
after Oak Partners had filed its response and incurred these fees and
expenses.  Moreover, Oak Partners
contends that, regardless of the fees and expenses involved in responding to
the motion, it was prejudiced because Northwest Anow has in one document, forced Oak Partners to marshal its evidence,
and even more damaging, marshal the thought processes and legal analysis of Oak
Partners= attorneys on these issues.@  








Northwest responds that the
construction industry arbitration rules provide for summary dispositions by the
arbitrator:  AIn addition to the final award, the arbitrator may make other
decisions, including interim, interlocutory, or partial rulings, orders, and
awards.@  Thus, according to Northwest,
Oak Partners could not have been prejudiced by responding to the motion for
partial summary judgment when the same procedure would have been available to
Northwest in arbitration.













Again, Northwest focuses only
on the effects of its actions in isolation. 
Not only did it delay nineteen months before moving to compel
arbitration, during which time it actively pursued litigation in the trial
court, Northwest also sought discovery that cannot be characterized as only
minimal.[11]  It actively sought relief from the trial
court, forcing Oak Partners to respond and to incur attorneys= fees for lead counsel and local counsel that are directly linked to
Northwest=s actions in
the suit, which fees Oak Partners documented in its response to the motion to
compel.[12]  Unlike in cases cited by Northwest, here, Oak
Partners introduced evidence supporting its claims of prejudice.  Cf. In re Vesta Ins. Group, 192 S.W.3d
at 763 (ABecause Cashion offered none of these documents in the trial court and
presented no details about any of them, the record does not show whether these
[discovery] requests were limited or extensive, whether they sought information
for affirmative claims or defensive ones, or even whether they addressed the
merits or merely the arbitration issue.@); Granite Constr. Co. v. Beaty, 130 S.W.3d 362, 367 (Tex. App.CBeaumont 2004, no pet.); Williams Indus., Inc., 110 S.W.3d at
139-41.  Accordingly, we conclude and
hold that Oak Partners showed prejudice from Northwest=s substantial invocation of the judicial process.  See Price, 791 F.2d at 1161-62 (A[W]here a party fails to demand arbitration during pretrial
proceedings, and, in the meantime, engages in pretrial activity inconsistent
with an intent to arbitrate, the party later opposing a motion to compel
arbitration may more easily show that its position has been compromised, i.e.,
prejudiced.@).

Northwest did not just move
to arbitrate Oak Partners= claims,
however; it also sought to arbitrate the claims involving the
subcontractors.  None of the
subcontractors presented evidence to the trial court regarding prejudice.  Thus, we cannot conclude that waiver was
proved as to the subcontractors.  See,
e.g., Granite Constr. Co., 130 S.W.3d at 367; Williams Indus., Inc.,
110 S.W.3d at 139-41.  Because the trial
court=s order denied Northwest=s motion to compel in its entirety as to all parties, we conclude and
hold that the trial court erred by refusing to compel arbitration of the claims
between Northwest and the subcontractors.[13]  We therefore sustain Northwest=s third issue in part as to the claims involving the subcontractors;
we overrule it in part as to the claims between Northwest and Oak Partners.








Mediation as Condition Precedent to Arbitration

At the
hearing on the motion to compel, one of the subcontractors, Ari-Tex, argued
that the arbitration agreement with the subcontractors required Northwest to
mediate before resorting to arbitration and that Northwest had failed to
mediate with the subcontractors;[14]
therefore, arbitration could not be compelled until Northwest had attempted to
mediate its disputes with the subcontractors. 
Ari-Tex has not responded to Northwest=s appeal; however, Northwest brings a fourth issue contending that
appellees have waived their right to rely on mediation as a condition precedent
to enforceability of the arbitration clause. 








Although the AIA Document
A201-1997 that was incorporated into the parties= agreements clearly states that mediation is a condition precedent to
arbitration with regard to at least some claims arising from the agreements,
none of the subcontractors allege any damages from Northwest=s failure to mediate with them. 
See In re U.S. Home Corp., 236 S.W.3d 761, 764 (Tex. 2007).  Moreover, the subcontractors initially filed
suit against Northwest in district court rather than seeking mediation pursuant
to the agreements.  Thus, they waived
their right to first proceed through mediation. 
See id.; Dallas Cardiology Assocs., P.A. v. Mallick, 978
S.W.2d 209, 212-13 (Tex. App.CTexarkana 1998, pet. denied).

Conclusion

Having overruled Northwest=s dispositive issues as to Oak Partners, we affirm the part of the
trial court=s order
denying Northwest=s motion to
compel arbitration as to the claims between Northwest and Oak Partners.  However, having sustained Northwest=s dispositive issue as to the subcontractors, we reverse the part of
the trial court=s order
denying arbitration as to the claims between Northwest and the subcontractors
and remand to the trial court with instructions to compel arbitration as to
those claims only.  Having determined
that Northwest failed to bring forward any evidence of interstate commerce, we
dismiss its petition for writ of mandamus.

 

 

TERRIE LIVINGSTON

JUSTICE

 

PANEL
B:   LIVINGSTON, DAUPHINOT, and WALKER,
JJ.

 

DAUPHINOT,
J. filed a concurring and dissenting opinion.

 

DELIVERED:  March 6, 2008



 











 
 
 
 
 
 
 




 

 

 

 

 

 

                                      COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

                                        NO.
2-07-293-CV

 

NORTHWEST CONSTRUCTION                                              APPELLANT

COMPANY,
INC.

 

                                                   V.

 

THE OAK PARTNERS, L.P.,                                                    APPELLEES

MORGAN
DEVELOPMENT

AND
SUPPLY, INC.,

METROPLEX
MASONRY, INC.,

ARI-TEX,
INC., MAX PLUMBING

CONTRACTORS,
INC.,

S
& S TILE, LTD., AND

KENT-ANDERSON
CONCRETE, L.P.

D/B/A
ANDERSON CONCRETE

CONSTRUCTION

                                                    

 

                                              ------------

 

              FROM
THE 355TH DISTRICT COURT OF HOOD COUNTY

 

                                              ------------

 

AND

 

                                                    

 

 

 

 

 

 








 NO.
2-07-328-CV

                                                    

IN RE NORTHWEST                                                                 RELATOR

CONSTRUCTION
COMPANY, INC.

                                                    

                                              ------------

 

                                    ORIGINAL
PROCEEDING

 

                                              ------------

 

                   CONCURRING
AND DISSENTING OPINION

 

                                              ------------

I agree that Northwest=s petition for writ of mandamus should be dismissed.  I also agree that we should reverse the trial
court=s order denying arbitration as to the claims between Northwest and the
subcontractors and remand to the trial court with instructions to compel
arbitration on those claims.

I dissent, however, from the
majority=s conclusion that Oak Partners met its heavy burden to show sufficient
prejudice to overcome the strong presumption against waiver of arbitration.[15]  I would therefore reverse in its entirety the
trial court=s order
denying arbitration and remand this case to the trial court with instructions
to compel arbitration on all claims.

 

LEE ANN DAUPHINOT

JUSTICE








DELIVERED: March 6, 2008











[1]The
copy of the agreement in the record is signed only by counsel for
S & S Tile and Northwest.  





[2]At
trial, the only parties who opposed Northwest=s
motion to compel arbitration were Oak Partners, Kent-Anderson, and
Ari-Tex.  Kent-Anderson has indicated in
both the appeal and mandamus proceeding that it no longer opposes arbitration,
and Ari-Tex has not filed any documents in either cause in our court.





[3]For
example, during a discussion between Northwest=s
counsel and the trial court regarding the exhibits attached to the motion to
compel, the following exchange occurred:

 

THE
COURT:       Where are you again?

 

[NORTHWEST=S
COUNSEL]:  The very first page.

 

THE COURT:       All right.  I see it. 





[4]Oak
Partners attached to its response to Northwest=s
motion to compel an affidavit from Teresa Shook, a Director of Assisted Living
Consultants, Inc., which is a managing member of the general partner of Oak
Partners.  In her affidavit, Shook
asserted that AOak
Partners did not agree to be bound by arbitration, and does not agree it is
bound by arbitration.@  But this conclusory statement, without more,
does nothing to controvert the evidence of the agreement as attached to
Northwest=s
motion to compel.  Moreover, Oak Partners
never challenged the existence of an arbitration agreement in its response,
which was premised solely on its contention that Northwest waived its right to
arbitrate.  





[5]See
In re Neutral Posture, Inc., 135 S.W.3d 725, 728 (Tex. App.CHouston
[1st Dist.] 2003, orig. proceeding) (discussing Howsam and holding that
trial court was proper forum for determining issue of substantive
arbitrability).





[6]Thus,
we need not decide whether this court should follow Howsam in the
context of reviewing a trial court=s decision under the
TGAA.  See Grand Homes 96, L.P. v.
Loudermilk, 208 S.W.3d 696, 703 (Tex. App.CFort
Worth 2006, pet. filed); see also In re Global Constr. Co., 166
S.W.3d 795, 798 (Tex. App.CHouston [14th Dist.] 2005,
orig. proceeding) (conditionally granting writ of mandamus after holding, based
on Howsam, that arbitrator rather than trial court should decide waiver
issue in FAA-controlled case). 





[7]The
standard for determining waiver of the right to arbitrate is the same under the
TGAA and the FAA.  Southwind Group,
Inc., 188 S.W.3d at 735; Brown v. Anderson, 102 S.W.3d 245, 250
(Tex. App.CBeaumont
2003, pet. denied).





[8]Northwest
acknowledges that requests for admissions and interrogatories are not available
under the applicable rules except Ain extraordinary cases when
the demands of justice require it.@  However, Northwest contends that all of the
information included in those forms of discovery would be nevertheless
discoverable in arbitration via other forms of discovery.  Regardless, Oak Partners presented evidence
of its expense and time related specifically to the types of discovery that is
unavailable in arbitration, and there is no evidence that this is the type of
extraordinary case in which an arbitrator would allow additional discovery.





[9]Northwest
attributes any prejudice caused by Oak Partners=
engaging local counsel to Oak Partners= own decision to sue in its
chosen forum.  See LJA Eng=g and
Surveying, Inc. v. Richfield Inv. Corp., 211 S.W.3d 443, 446-47
(Tex. App.CBeaumont
2006, no pet.); Transwestern Pipeline Co. v. Horizon Oil & Gas Co.,
809 S.W.2d 589, 593 (Tex. App.CDallas 1991, writ dism=d
w.o.j.).  But it is clear from the
billing records submitted by Oak Partners that local counsel did not even begin
to participate in the suit until Northwest filed its counterclaim and began to
participate in those activities that we have determined substantially invoked
the judicial process by indicating an intent to litigate the suit in Hood
County.  Thus, Oak Partners presented
evidence directly relating its expenses to Northwest=s
activity in the suit.





[10]Although
Oak Partners did not include copies of its answers to discovery in the
appellate record, it did provide evidence that it answered the discovery and
incurred expenses in doing so, in the form of billing records from its lead
counsel and local counsel.  Northwest did
not present any evidence refuting Oak Partners=
counsel=s
sworn statement indicating that Oak Partners had responded to all of Northwest=s
discovery requests.  Additionally,
Northwest admitted that it sought discovery for mediation purposes and that
after the initial mediation, it sought additional discovery for purposes of
another mediation.





[11]See,
e.g., In re Bruce Terminix Co., 988 S.W.2d at 704
(holding, when movant=s Ause
of the judicial process was limited to filing an answer and propounding one set
of eighteen interrogatories and one set of nineteen requests for production,@ that
prejudice was not shown because Awhen only a minimal amount
of discovery has been conducted, which may also be useful for the purpose
of arbitration, the court should not ordinarily infer waiver based upon
prejudice@)
(emphasis added).





[12]Northwest
contends that Oak Partners cannot show prejudice due to its incurring attorneys= fees
as a result of Northwest=s
actions (1) because the construction industry arbitration rules provide that an
arbitration award Amay
include . . . an award of attorneys= fees if all parties have
requested such an award or it is authorized by law or their arbitration
agreement@ and
because (2) section 171.048 of the TGAA requires arbitrators to award attorneys= fees
if they are provided for in the arbitration agreement or they are provided for
by law in a district court in a civil action. 
Tex. Civ. Prac. & Rem. Code
Ann. ' 171.048
(Vernon 2005).  But the language of the
construction industry arbitration rules does not require an arbitrator
to award fees even if a party presents evidence supporting such an award.  Additionally, Northwest=s
claims against Oak Partners include claims for breach of contract and negligence;
Oak Partners=
attorneys= fees
are recoverable only if it prevails on its breach of contract action.  See id. '
38.001(8) (Vernon 1997); Green Int=l, Inc. v. Solis, 951
S.W.2d 384, 390 (Tex. 1997). 





[13]We
realize this results in the unfortunate possibility of trying these cases in
different forums but Aconsiderations
of efficiency and convenience cannot override either a signatory=s
arbitration agreement or a nonsignatory=s right to a jury trial.@  In re Merrill Lynch Trust Co. FSB, 235
S.W.3d 185, 192 (Tex. 2007) (orig. proceeding) (holding arbitration agreement
must be enforced regardless of presence of other people involved in the
underlying dispute but not signatories to the arbitration agreement); see
also Kilroy v. Kilroy, 137 S.W.3d 780, 787-88 (Tex. App.CHous.
[1st Dist.] 2004, no pet.) (reversing trial court order staying
arbitrable part of dispute pending determination of issues in nonarbitrable
part of dispute remaining in trial court).





[14]Ari-Tex
alleged that the subcontractors were not allowed to attend the mediation
between Northwest and Oak Partners.

 





[15]See
In re D. Wilson Constr. Co., 196 S.W.3d 774, 783 (Tex. 2006); In
re Vesta Ins. Group, Inc., 192 S.W.3d 759, 763 (Tex. 2006).